Ranney, J.,
delivered the opinion of the court.
At the January term, 1855, of the court of common pleas for Hamilton county, the plaintiff in error was convicted of the crime *454 of maliciously stabbing one John Morris, and sentenced to imprisonment in the penitentiary for the period of one year. Without particularly adverting to the complicated pleadings, filed in the court below, it is enough to state that they are sufficient to present the two propositions now relied upon to reverse the judgment:
1. That the court had no jurisdiction of the case; and 2. That the indictment was not found by a properly constituted grand j^y-
454] *1. Had the court jurisdiction? Counsel in argument have made the answer to this question depend wholly upon the constitutionality of the act of May 1, 1854, “ to abolish the criminal court in the county of Hamilton, and to transfer the unfinished business of said court to the court of common pleas in the first district.” 52 Ohio L. 107. Aside from certain objections, which seem to have been taken under a mistake of the facts, they insist that the act is void, because it has the effect, without having obtained the concurrence of two-thirds of the members elected to each branch of the general assembly, of diminishing the number of the judges in the first judicial district, and. of vacating the office of the judge of the criminal court; and that in those particulars .it is inconsistent with the fifteenth section of the fourth article of the constitution.
We do not agree with counsel, that the solution of these questions is necessarily involved in the decision of this case; and without a necessity for doing so, we do not consider it proper to express an opinion upon them, until those immediately interested shall, if they desire it, have been fully heard. Whether this section of the constitution extends to any other courts than those named in and created by the constitution itself, or not; or whether the criminal court is or is not abolished, and the judge thereof, in or out of office, seems to us in no way decisive of the question, whether the court of common pleas in that county has been invested with jurisdiction over.the crime of which the plaintiff in error stands convicted. The existence of the criminal court, and even the exercise of its former jurisdiction, interposes no obstacle to investing the court of common pleas with jurisdiction over the same class of cases; while, on the other hand, the effectual abolition of the former would not authorize the latter to exercise such jurisdiction without legislative authority; the constitution, article four, section four, expressly providing that “ the jurisdiction of the *455, 456 courts of common pleas, and of the judges thereof, shall be fixed by law.”
*The constitution itself confers no jurisdiction whatever [455 upon that court either in civil or criminal cases. It is given a capacity to receive jurisdiction in all such cases, but it can exercise none until “ fixed by law.”
By the fifth section of the act to create a court of criminal jurisdiction in Hamilton county (50 Ohio L. 90), the court thereby created was invested with jurisdiction over crimes to the same extent and in the same manner as the courts of common pleas in other counties of the state; and the jurisdiction of the court of common pleas in that county was, to the same extent, taken away; and it continued deprived of this jurisdiction down to the passage of the act in question, when it was restored; the second section providing that “ the said court shall have such powers and jurisdiction in criminal matters, in the county of Hamilton, as are conferred by law upon the court of'common pleas in other counties in this state.” This act was intended to accomplish two distinct purposes : first, the abolition of the criminal court, and the transfer of its unfinished business to the court of common pleas ; and second, to confer uj)on the last-named court the requisite jurisdiction, not only to try and determine such unfinished business, but in the future to exercise the same powers in criminal cases as wore exercised by the same court in other counties of the state. Now, suppose the first of these objects to have failed, what possible effect could that have upon the last ? No constitutional impediment existed to effecting the last by an ordinary act of legislation, and if it had stood alone, no one would have doubted that it had been effectually accomplished. But no principle is better settled or supported by strong reasons than that which gives effect to the valid parts of an enactment, when capable of separation, although other parts of the same law may be invalid, by reason of their repugnancy to a constitutional provision. This principle has been several times recognized by this court, and is one of familiar application in the courts off our sister states and of the Union. It may be admitted that the motive for restoring this jurisdiction to *the [456 common pleas had its origin in the supposition that the criminal court was at the same time and by the same act abolished. But it is now entirely immaterial what might have been the inducements that led to the enactment, or how grossly mistaken the gen *457 eral assembly, may have been. So far as it is not in conflict with the constitution it is a law of the land ; and, as a law of the land, we have no discretion to refuse its enforcement.
Without, thei’efore, expressing any opinion as to the validity of that part of the act which assumes to abolish the criminal court, or to vacate the office of its judge, we entertain no doubt that other parts of it have effectually conferred jurisdiction upon the court of common pleas over the crime of which the plaintiff in error has been convicted ; and that to this extent at least, that act is open to no valid constitutional objection.
II. But while we are clear in the opinion that the court decided correctly in overruling the pleas to the jurisdiction, we are equally clear that the indictment was not found by a legally constituted grand jury, and that the court erred in making the same disposition of the pleas in abatement. To protect the citizen from unfounded accusations, the laws of this state have always guarded with scrupulous care the selection, return, and impaneling of the grand jury; and any substantial departure from the-provisions of the statutes has always been held a good cause for quashing the indictment. Doyle v. The State, 17 Ohio, 222. The third section of the act conferring criminal jurisdiction upon the court, provides the manner in which it is to be supplied with a grand and petit jury. At least fifteen days prior to the first Monday in every month, the clerk is required to draw from the jury-box the .names of twenty-seven jurors, the first fifteen of whom are to be summoned to serve as grand jurors, and the remaining twelve, as petit jurors, for the trial of criminal cases; their terms of service to commence on the first Monday of the next succeeding month.
This act took effect on the first day of January, 1855 ; and on 457] that day *the court commenced the session, at which the present indictment was found. Now, it was plainly impossible to obtain a jury, in the manner required by this act, for that term of the court. Before the law took effect, the clerk had no power to draw the jury, and after it did take effect, it was too late to do so for that term. The consequence was, that no indictment could be legally found until the February term; and that by a jury drawn and summoned in January.
But the court, instead of waiting until, by the terms of the law, it could enter upon the exercise of this part of its jurisdiction, ordered the venire issued from the criminal court, to be returned into *458 the common pleas, and brought in by attachment the persons summoned to serve in the former court, and compelled them to serve in the latter. This was clearly irregular, and wholly unauthorized. There is not a word in the law that gives the common pleas any power whatever over the process of the criminal court. The jury thus obtained was the jury of the criminal court, and could legally exercise its functions there and nowhere else. The common pleas had no rightful power over it, and its acts in that court were wholly inoperative and illegal.
For this error the judgment is reversed, and the cause remanded for such other and further proceedings against the plaintiff in error as may be consistent with the foregoing opinion, and in accordance with law.